FELIX TORRES, JR.
P.O. BOX 8065
LAGUNA HILLS, CA 92654
TELEPHONE: 650-906-1346
Email: boalt77@yahoo.com



*Filed*
MAR 13 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Case No. CV 08 - 80066 MISC. JW

| | |
|---|---|
| FELIX TORRES, JR., | POINTS AND AUTHORITIES IN SUPPORT OF FILING COMPLAINT FOR INJUNCTION AND DECLARATORY RELIEF |
| A former member of the State Bar of California | |
| Plaintiff, | Per Court Order this case is subject to pre-filing review |
| vs. | |
| THE STATE BAR OF CALIFORNIA; THE BOARD OF GOVERNORS OF THE STATE BAR, individually and in their official capacities; THE STATE BAR JOURNAL; Dean Kinley, *Publisher;* Nancy McCarthy, *Editor & General Manager;* Kristina Horton Flaherty, *Staff Writer;* David Cunningham, *Production Coordinator* Kathleen Beitiks, *Web Editor;* Diane Curtis, *Staff Writer; all* individually and official capacities; and DOES 1-10, Inclusive. | |
| Defendants | |

POINTS & AUTHORITIES RE PRE-FILING COMPLAINT FOR PROSPECTIVE RELIEF 1


## INTRODUCTION

1. PLAINTIFF hereby submits his complain and who is subjected or will be subjected to slander, libel, being presented in a false light, misrepresentation, via present scheme of defendants to post on its web site a false pdf/word file of the disciplinary proceeding disbarring Plaintiff which is also included not only on the State Bar's web cite. The State Bar monthly Journal will also post a summary of the pdf/word file of disbarment in its March 2008 issue.

2. Plaintiff contends that his disciplinary record that appears on the California Bar's website violates his "constitutional right to privacy" as a Public citizen (i.e. his name has been stricken from the rolls of attorneys licensed to practice in California and thus is no longer a member of the Bar), infringes his right to confidentiality and autonomy.

3. Plaintiff furthermore, contends that by making his disciplinary record (e.g. pdf/word file of the Order of disbarment) available in response to a members search without giving him a chance to review or comment on that "file", defendants violated his procedural and substantive due process rights.

4. Plaintiff also contends that the posting constitutes a prior restraint prohibited by the First Amendment and maintaining the posting violates substantive due process because it was posted pursuant to a conspiracy designed to destroy [his] reputation and ability to make a living in that defendants are accused of intentional

interference with a contractual dealings in business employment relationship between plaintiff and potential employers e.g. in the field of Wealth Management.

5. And finally, Plaintiff maintains that the posting violates the Equal Protection Clause because the California Bar only posts the records of disciplinary proceedings (Orders in pdf/word files occurring after 2005) on its website as to some attorneys and not others, a majority of which are lawyers of color.

## THE LAW

As the Supreme Court has applied the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Municipalities, in contrast, are not entitled to sovereign immunity in federal court. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001) ("[T]he Eleventh Amendment does not extend its immunity to units of local government."); *Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 777-78 (9th Cir. 2005) (Eleventh Amendment does not extend to municipal corporations or other political subdivisions that are not arms of the state).

There are, however, exceptions to Eleventh Amendment immunity. When acting pursuant to its authority under § 5 of the Fourteenth Amendment, Congress can abrogate the sovereign immunity of the states. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985) (superseded by statute on Sovereign immunity also does not bar suits for prospective injunctive relief against individual state officials acting in their official capacity. *See Ex parte Young*, 209 U.S. 123, 156-57 (1908). Moreover, a state may waive its Eleventh Amendment immunity — by, for

example, removing an action to federal court, which is NOT what, is happened in this case. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) (by removing to federal court, a state "voluntarily invoke[s]" federal jurisdiction and thereby waives its immunity).

**1. Eleventh Amendment Immunity**

The defense of the eleventh amendment is a jurisdictional question. *Edelman v. Jordan,* 415 U.S. 651, 677-78, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974).

The eleventh amendment bars both a federal court action for damages (or other retroactive relief) brought by a citizen against a state and such a federal court action brought by a citizen against a state official acting in his official capacity. *Edelman,* 415 U.S. at 663; *Quern v. Jordan,* 440 U.S. 332, 337, 59 L. Ed. 2d 358, 99 S. Ct. 1139 (1979).

It is thus clear that the eleventh amendment will bar plaintiff from bringing his claims in federal court against the state and state officials in their *official* capacities for money damages. **It will not, however, bar claims against the state officials in their *personal* capacities.** *Hafer v. Melo,* ___ U.S., 112 S. Ct. 358, 116, L. Ed. 2d 301 (1991); *DeNieva v. Reyes,* 966 F.2d 480, 483-84 (9th Cir. 1992). n5

> N5 the eleventh amendment would not bar a federal court action seeking **prospective injunctive relief** under federal law, even if the action were brought against the state or its officials acting in their official capacities. *Edelman,* 415 U.S. at 664. Pena did not request injunctive relief in his original complaint. Because Washington has withdrawn its digital rectal

search policy, an action for injunctive relief may now be moot. *Tribble*, 860 F.2d at 325 n.7.

The Supreme Court in *Hafer* described the difference between official capacity and personal capacity suits. "The phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer*, 112 S. Ct. at 362. An official sued in his official capacity has the same immunity as the state, and is entitled to eleventh amendment immunity. *Id.* at 361. An official sued in his personal capacity, although deprived of eleventh amendment immunity, may assert a defense of qualified immunity. *Id.* at 362.

Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "on the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." [*Kentucky v. Graham*, 473 U.S. 159, 166, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985)]. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.* at 166-167.

Will v Mich. Dept of State Police, 491 US at 71 footnotes 10 which states that the State or officials acting in their official capacities are persons under 1983 and can be subject to prospective injunctions. **"Of course a state official in his or her official capacity when sued for injunctive relief would be a person under 1983**

because 'official capacity actions for prospective relief are not treated as actions against the State. Kentucky v. Graham 473 US at 167, n 14."

**2. WEB SITE POSTING Claim:**

Key to this Court's review is the stricture that when reviewing a dismissal of a complaint such as under Rule 12(b) (6), all allegations are to be considered in a light most favorable to the plaintiff. Gone is any heightened pleading requirement that may influence the court's disposition of the case. *Leatherman v Tarrant County NICU*, 507 US 163 (1993); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).

In so doing, this Court must determine, viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in its favor, whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Id.*; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Furthermore, "[a] district court's decision as to whether a claim is barred by the statute of limitations is reviewed de novo," *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000), as is the question of when "the statute of limitations begins to run," *Orr*, 285 F.3d at 780. Applying that standard, for actions under 42 U.S.C. § 1983 like Plaintiff's, Courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004), *cert. denied*, 126 S. Ct. 351 (2005). Thus, "California['s] statute of limitations for assault, battery, and other personal injury claims" applies to Plaintiff's web site claims unless it is inconsistent with federal law. *Id.* The current version of that statute, which became

effective on January 1, 2003, provides that personal injury actions must be brought within two years after the cause of action arose. *See Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004); *see also* CAL. CIV. PROC. CODE § 335.1. Because that statute does not apply retroactively, any cause of action that was more than one-year old as of January 1, 2003 would be barred under the previous one-year statute of limitations. *Jones*, 393 F.3d at 927 & n.4; *see also Maldonado*, 370 F.3d at 954-55.

Plaintiff argues that the single publication rule, as codified in California at Civil Code § 3425.3, applies to Plaintiff's claims, and under that "rule, with respect to the statute of limitations, publication generally is said to occur on the first general distribution of the publication to the public, meaning that a "cause of action accrues and the period of limitations commences, *regardless* of when the plaintiff secured a copy or became aware of the publication." *Shively v. Bozanich*, 80 P.3d 676, 684 (Cal. 2003) (internal quotation marks omitted); *see also* RESTATEMENT (SECOND) OF TORTS § 577A(4) (1977) ("As to any single publication, (a) only one action for damages can be maintained; (b) all damages suffered in all jurisdictions can be recovered in the one action; and (c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions."). If Plaintiff is correct, and the first time the Bar web site published the disbarment Order in pdf/word format was on January 19, 2008, the two-year limitations period does not bars Plaintiff's claims.

Because federal—not state—"law determines when a civil rights claim accrues," *Maldonado*, 370 F.3d at 955, California's single publication rule does not apply to Plaintiff's claims by its own force. Instead, "[u]nder federal law, a claim

accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). In applying that principle, the single publication rule's logic to hold that once that standard is met, a single publication gives rise to only one cause of action. In *Oja v. United States Army Corps of Eng'rs*, 440 F.3d 1122, 1128, 1130-33 (9th Cir. 2006), for instance, the Court applied the single publication rule to a plaintiff's claim that the Corps of Engineers had violated the Privacy Act by posting the plaintiff's employment information on the internet. *Oja* held that the plaintiff's claims were barred by the Privacy Act's two-year statute of limitations since the first posting had occurred more than two years before the plaintiff brought suit and the plaintiff conceded that he had seen that posting more than two years before he filed suit. *Id.* at 1125, 1133. In so doing, we also held—as we do now—that the "[a]pplication of the single publication rule to Internet publication was not inconsistent with" federal law because that rule focuses a plaintiff's "claims against a defendant, thereby economizing judicial resources while preserving the plaintiff's ability to bring the claims." *Id.* at 1133. Other circuits have applied the single publication rule's logic in a similar manner. *See, e.g., Pitts v. City of Kankakee*, 267 F.3d 592, 596-97 (7th Cir. 2001) (applying the single publication rule's logic to hold that a defamation claim arising under § 1983 was barred on statute of limitations grounds).

    Applying that principle, Plaintiff's civil rights claims are not barred by California's one-year statute of limitations. Plaintiff saw the summary he now complains of in the print version of the *California Bar Journal* in March 2008, and the pdf/word file on or after January 19, 2008.

1  Because, under the single publication rule, a single publication gives rise to
2  only one cause of action, the statute of limitations period began to run on *all* of
3  Plaintiff's claims in JANUARY 2008 and thus his complaint if timely.

## CONCLUSION

5  The leading case which is on point is Canatella v. Van de Kamp decided by the
6  9th Circuit on May 3, 2007, Case No. 06-15186 (i.e. former California attorney
7  suing for state bar web publication). After twelve unsuccessful law suits and
8  twelve unsuccessful appeals against defendants, Plaintiff finally has CHECK
9  MATE.

11  DATED: MARCH 4, 2008

12  FELIX TORRES, JR.